IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Diane Gaston )
15 White St. )
Berea, Ohio 44017 )  CASE NO. 1:25 CV 0389
   Plaintiff )
) JUDGE ____JUDGE BARKER____
)
Cuyahoga Community College )
700 Carnegie Ave. )
Cleveland, OH 44115 )  FILED
   Defendant ) COMPLAINT
FEB 27 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## NATURE OF ACTION

1. This is a civil-rights action brought under federal and state anti-discrimination-and-retaliation laws including 42 U.S.C. § 1983 (First and Fourteenth Amendments); Title VI and Title VII of Civil Rights Acts of 1964 (retaliation in higher education and employment respectively), Ohio Rev. CODE § 4112, et seq., (Ohio employment retaliation); and civil liability for criminal acts and civil intimidation under Ohio law.

2. When a letter of concern was sent to upper administrators of Cuyahoga Community College ("Tri-C" or the "College")), outlining scheduling and counterparts violations, aided by selected union and faculty senate leadership, administrators of Tri-C, embarked on a multi-faceted suppression and retribution campaign to prevent further exposure of ongoing discriminatory and unfair labor practices and to prevent my revealing of violations of several institutional and State of Ohio policies which are also matters of concern to the public.

## PARTIES

3. I, Diane Gaston was employed as a tenured faculty member of by Cuyahoga Community College for Twenty-three (23) years. I reside in Cuyahoga County, Ohio.

4. Defendant Cuyahoga Community College is a public, governmental higher education, educational institution with four campuses throughout Cuyahoga County in Ohio. I had reasonable expectation of adherence to Ohio laws.

## JURISDICTION AND VENUE

This court has personal jurisdiction over the defendant (the College) as the institution is within boundaries of Cuyahoga County Ohio.

Venue is proper because all parties involved reside work or conduct business in Cuyahoga County and events giving rise to this claim took place within the Colleges jurisdiction.

## FACTUAL BACKGROUND

***I, Diane Gaston, a distinguished tenured faculty member with a spotless record, earning the highest faculty awards at the College, was forced to retire as Associate Professor of Philosophy, Humanities and Religious Studies on December 31, 2024.***

5. From 2001 -2006, I served at each of the three main campuses as adjunct faculty or lecturer.

6. In 2007, I was awarded the first ever multi-office full-time faculty schedule, split between Metro and Western campuses.

7. I served as Faculty Coordinator for Philosophy, Humanities and Religious Studies for the Metropolitan campus from 2008-2012, where I increased enrollment in those areas significantly.

8. Receiving tenure in 2012, I transferred fully to Western Campus in Parma, Ohio where I also served as Faculty Coordinator, surrendering the position in 2017.

9. Throughout my tenure at the College, I have been recognized for countless student initiatives and received both the Ralph M. Besse Excellence in Teaching as well as the League for John & Suanne Rouche Innovation in Community College Excellence Awards. The highest faculty honor for any faculty member at Tri-C.

10. Because of the extreme hostile work environment, created by the active campaign to destroy my otherwise stellar reputation, adverse actions of administrators, which includes Human Resources as well as faculty leadership, I was forced to retire on December 31, 2024.

***On February 20, 2024, I sent a letter of concern outlining an unusual inability to select a reasonable schedule and to access available resources.***

11. As senior in my department and Associate Professor of Philosophy, Humanities and Religious Studies, my concerns included but were not limited to repeated instances of my junior colleagues misappropriating my intellectual property, placing their names on my efforts and publications while excluding me from opportunities and resources available to my white junior counterparts and part-time instructors.

12. A series of events followed culminating in the difficult and premature decision to retire. Including but not limited to:
- Schedule manipulation that removed necessary courses for non-essential vanity classes, while preventing my teaching at other campuses.
- Continual violations of my CCC-AAUP CBA intellectual property rights by removing my name from crated curriculum and publications.
- Being forced to maintain non-productive and "serial enrollees," in my classes against College directed minimum completion requirements.
- My immediate supervisor conducted a non-participatory 'faculty evaluation, against CCC-AAUP CBA agreement.
- Continual unauthorized accessing my Blackboard course sites by various college employees.
- Ongoing browser and drop for non-attendance enrollment issues.

2

**On April 4, Professor Gaston, Associate Professor of Philosophy, Humanities and Religious Studies received a communication announcing a non-posted Tenure-Track position at the Westshore Campus in Philosophy.**

13. Cuyahoga Community College hiring policy demands
    1. A college-wide announcement and public posting of any new Tenure Track position.
    2. Selection and convening of the college-wide hiring committee through the Joint Faculty Senate Committee.
    3. Posting of transfer memo college-wide for all eligible faculty to consider.
    4. Public announcement of the new hire upon making a final selection.

14. There was no announcement of a Tenure Track position in Philosophy for Westshore within Cuyahoga Community College.

15. Because the hiring committee was selected and conducted secretly by junior counterparts, I was denied the right to serve as a member of the hiring committee for a colleague in my department or have knowledge there that was a potential colleague.

16. By not publicly posting the positon transfer memo as required, I was denied the option of transfer to the Westshore campus as my white junior colleague, who had chosen to transfer from Westshore to Metro which created the open positon in question.

17. Uncharacteristically, there was no college-wide or public announcement of the secret April 2024 hire of the Tenure-Track, Philosophy faculty member for the Westshore campus.

18. The new hire began in August of 2024, introduced with new faculty who had been hired through the authorized and stated procedure outlined above.

**In August of 2024, I was informed that one of my counterparts reported to HR that he feared for his safety, after aggessivley approaching me in the B-building suite outside our collective offices in June of 2024.**

19. In August of 2024, I was informed that a much younger male counterpart filed a spurious report that he "feared for his safety" and that I "potentially" created a "Hostile Work Environment."

***I am currently disabled, granted work from home status beginning in 2023.
I gained full FMLA status until my retirement on December 31, 2024.***

20. Althought the charge was filed in June 2024, I was not informed until August per requrest to apprear for a confidential hearing. Always cautioned to maintain secrecy.

21. Having provided at least five witnesses in the August 21, 2024 hearing to the two minute exchange, all verified that the much larger younger male counterpart was the agressor. All were cautioned to maintain secrecy surrounding the event.

22. Because I had not had any further information, I inquired on October 4, 2024 of the decision of the specious complaint.

23. I finally received the Final Outcome Letter on October 14th in my favor.

3

24. Unlike previous final outcome letters received in the past, this Final Outcome Letter was minus details, any narritive or witness statements.

25. The letter merely stated *"The investigation concluded that your actions did not rise to the level of violation of College policy or procedure."*

### As the pressure campaign continued, inappropiate actions on the part of my counterparts escalated.

26. With no documentation or rationale or notice to me, the College allowed the very counterparts involved, to illegally access my learning management Blackboard site, offer a brutal critique of my professional integrity as rationale to the student for changing her grade.

27. On October 4, 2024, in violation of AAUP-Collective Bargaining Agreement, Professor Gaston received a copy of a final determination letter overturning a grade of F she assigned to a student in her summer 2024, 2000 level Religion course.

28. The letter informed the student that the grade of F had been changed to a C. The rationale provided to the student painted me as Professor Gaston was merely copied.

### *The AAUP contract demands I (the faculty member in question) provide necessary documentation and rationale to address any faculty /student concern.*

29. The attached letter deceptively states "the faculty member was unavailable for input."
In violation of AAUP-Collective Bargaining Agreement (CBA), I must be informed.

30. They could not produce as there was not a memo request to participate on the non-announced Grade Dispute forwarded to faculty college-wide.

31. In violation of AAUP-Collective Bargaining Agreement (CBA), no justification or documentation or knowledge of the process was provided to Professor Gaston prior to changing the grade.

32. The attached defamatory letter alleged academic incompetence, and failure to adhere non-existing "industry syllabus standards to not offer partial credit.

33. Given that I have maintained a no-late work policy in my syllabi at The University of Akron, Notre Dame of Ohio as well as at Lorain County Community College, I am certain that the stated standard is a fabrication.

- To judge academic rigor, authorized access to the course site would have been required. I was not informed nor authorized illegal access of (at that time) anonymous faculty members to my course Blackboard site.

34. In violation of AAUP-Collective Bargaining Agreement (CBA) Level II Grade Dispute Panel member's names were not listed and remained anonymous despite numerous request.

### Cuyahoga Community College Grade Dispute Policy-

1. The student reaches out to faculty member.

2. The faculty member is forwarded a copy of the dispute and intent to convene Grade Review Panel by respective Dean.
3. Convened Panel Chair determines logistics of meetings
4. Review Panel members meet and confer with both faculty and student.
5. Final Determination communicated to both student and faculty member.

### *The student was provided my personal cell number following the close of the semester.*

35. On August 7th at 7:10 PM, I received a text message on my personal phone from the same student involved in the grade dispute regarding her final grade. The student had earned an F. *This student, a very popular sports figure at the College was somehow provided my personal cell number.

36. The student not having reached out the entire term was not familiar to me and I was extremely alarmed. I have never had unauthorized contact in my personal space by a student in my entire career.

37. I immediately reported the incident to my supervisor and the Student Affairs, Dean of Access & Completion.

38. As harassing messages continued, I was forced to change my personal phone number, causing great disruption that continues to this day.

39. After receiving the Final Determination letter, I recognized that it was the same student and immediately filed a grievance on October 6, 2024, requesting a reversal of the grade change and retraction of the defamatory letter sent to the student.

40. Instead of addressing the authorized contact by the student, the student was rewarded by the College with a drastic change of grade for reasons yet to be disclosed.

### *As I attempted to address the unlawful grade change and access of my Learning Management Page, I experienced opposition from all sides.*

41. Leadership in the Online Learning and Technology (OLAT) department refused to forward a report and ignored all inquiries regarding faculty or administrative access to my course sites, as is my legal right for any class created and registered in my name.

42. In violation of CCC-AAUP CBA, the college attempted repeatedly to delay the grievance hearing beyond the 10-day required convening.

43. To unsuccessfully avoid the grievance hearing, the college, attempted intimidation as Human Resources falsely claimed in a formal notice that "faculty should not attend virtual meetings while on FMLA."

44. Despite delays and disruptions, names of Level II faculty members were revealed on Friday, October 18th prior to the hearing.

45. The three names revealed would have been understood immediately by administrators, union and faculty leadership as the same three who had placed their names on my intellectual property, continually benefitted from my efforts and disadvantaging me in numerous ways.

46. To date, there has been no response, repercussion or acknowledgement of the relative disappearing of all my efforts which now displays the literal names and images of the counterparts involved. That they would allow three Philosophy counterparts of whom I have ongoing issues is alarming.

***Grade dispute panels normally contain a combination of disciplines for varied viewpoints.***

47. During the October 21, 2024 hearing there were no documents, rationale or justification offered for either the grade change or for not following college grade dispute policies.

48. On October 30, 2024 the College determined that there was no violation and refused my request.

49. As I prepared my appeal, and ignored request to verify if the student's summer graduation, transfer and athletic eligibility was dependent upon the grade change.

50. I reported anomalies in my emails and all emails related to the grade dispute had disappeared in my account.

51. After several attempts to have emails restored and the knowledge of the intentional acts carried out by the college; ignored by faculty leadership, I decided to leave the college to preserve my own physical and mental health.

52. Subsequently the appeal of the grade change decision and retraction was denied.

## RELIEF SOUGHT

For the reasons stated above, Plaintiff respectfully requests the following relief from the Court:

1. Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution; 2. Enter judgment in Plaintiff favor on all claims for relief; 3. Award Plaintiffs full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience suffered. 4. Award Plaintiff punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights; 5. Award Plaintiff (future) related and reasonable attorney fees (including expert fees) and all other costs of this suit; 6. Award all other relief in law or equity to which Plaintiffs are entitled and that the Court deems equitable just, or proper based on a fair hearing of the matter.

### Jury Demand
Plaintiffs demand a trial by jury on all issues within this complaint.

Diane Gaston  2/27/2025

2-27-25