IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DIANE GASTON, | CASE NO.   1:25-CV-0389 |
| Plaintiff, | JUDGE DAVID A. RUIZ |
| v. | **DEFENDANT CUYAHOGA COMMUNITY COLLEGE'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT** |
| CUYAHOGA COMMUNITY COLLEGE, | |
| Defendant. | **JURY DEMAND ENDORSED HEREON** |

Now comes Defendant Cuyahoga Community College ("Defendant" or the "College"), and for its Answer to Plaintiff's Amended Complaint states as follows:[1]

## RESPONSE TO NATURE OF ACTION

**Restated Paragraph:**

1.Plaintiffs' Amended Complaint raises seven distinct as well as combined civil-rights violations This action is brought under federal and state anti-discrimination-and-retaliation laws including 42 U.S.C. § 1983 (First and Fourteenth Amendments) and pursuant to 28 U.S.C. § 1331;

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

---

[1]As Plaintiff's Amended Complaint does not contain accurate or consistent paragraph numbers, the College's Answer restates verbatim each and every paragraph/allegation from Plaintiff's Amended Complaint (each a "Restated Paragraph"), and each Restated Paragraph is immediately followed by the College's corresponding answer. As used herein, all references to "above-restated paragraph of Plaintiff's Amended Complaint" refer to the immediately preceding Restated Paragraph. Where Plaintiff's Amended Complaint includes paragraph numbers, such numbers are included in the Restated Paragraphs.

**Restated Paragraph:**

2. Unlawful Employment Practices of Title VI and Title VII of Civil Rights Acts of 1964 (Inclusive Title VI, 42 U.S.C. § 2000d. 42 U.S.C. § 2000 d-4 as well as a.-e. including intending harm to students-retaliation in higher education; promoting a hostile work environment and inappropriate employment conduct respectively.)

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

3. Violations of Ohio Rev. CODE § 4112, et seq., (Ohio employment retaliation); and civil liability for criminal acts and civil intimidation under Ohio law 42 U.S.C. § 1981-enforceable through 42 U.S.C. § 1983 (throughout applicable charges) outlined in the EEOC below

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

4. Violations of Rule 3339-15-06 and ORC 3345.12 of the Revised Code (Theft and inappropriate use of Intellectual property, and any other institution statute of higher education defined in division (A)(2) of that section.)

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

5. Violations of Section 105 of the FMLA statute and section 825.220 (Prohibits interference, restraint, or denying the exercise of, or the attempt to exercise, any FMLA right.)

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

6. Violations of Ohio Rev. CODE § 4112.02(J); (Civil liability for criminal acts under R.C. § 2307.60), R.C. § 2921.03 and .05 ; civil liability for criminal acts under R.C.§ 2307.60 and R.C. § 2913.42(A)(1) and (A)(2), (encompassing retaliation, discriminated, and harmed due to falsified records.)

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

7. Violations of Ohio Rev. Code §§ 4112.02(J) and 4112.99, for aiding and abetting discrimination against Diane Gaston, charged against Cuyahoga Community College.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations or inferences contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

Under 42 U.S.C. § 1981a and 42 U.S.C. § 2000e et seq., whoever violates the above-described legal obligation is subject to a civil action for damages, injunctive relief, or any other appropriate relief.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant denies that Plaintiff has or can properly assert claims pursuant to the referenced statutes. All other allegations, inferences, or claims contained in the above-restated paragraph of Plaintiff's Amended Complaint are denied.

**Restated Paragraph:**

**2. (Statement from 4-1-2024 EEOC (Inquiry) Number: 532-2024-03141**

I voiced concerns of discrimination in the hostile treatment of my colleagues to the Associate Provost and Vice President of Learning and Engagement Dr. Lindsey English in February 2024. I specifically cited scheduling issues, creating cumbersome choices, seemingly exclusive to me. I copied on that email all upper administration as well as American Association of university professors and joint faculty Senate committee leadership. Since then, several incidents have occurred to further exacerbate the situation leading to this complaint.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

-My concerns also included but were not limited to several examples of my colleagues, misappropriating my intellectual property, removing my name from my efforts and excluding me from opportunities available to my White junior, counterparts and adjuncts. The most recent of which was the use of my previously submitted philosophy materials to create a non-essential religious studies class for a white adjunct, Robert Gala to teach. This was done covertly while I was out on a year-long sabbatical, using a subversive subject code change that avoided alerting the system, which would then have alerted me.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

-...As Associate Professor of Philosophy, Humanities and Religious Studies of Cuyahoga Community College and the only Black faculty member in my department, I voiced concerns of discrimination and hostile treatment of my colleagues... there was no response to my inquiry until I forwarded the April 1, 2024 email announcing a full-time position that had been secretly created a hiring committee form conducted and the position secretly feel by my junior philosophy counterparts. This yet another discriminatory action denied my right to transfer and the benefit of the counterpart consultation both of which all my junior faculty counterparts were clearly afforded.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

The position originally posted in October 2023 as philosophy, humanities and religious studies for the Metropolitan campus. Because I am the only full-time faculty member with all three credentials eligible for a transfer, my philosophy counterpart appealed to Dr. Heidi Kamel, president of CCC-AAUP and Michael Wilkins Chair of Joint Faculty Senate Council, to remove the religious studies and humanities requirements against my wishes... to successfully change the position so that my counterpart Bradley Lipinski, who only has philosophy credentials could apply as successfully transfer from the Westshore campus per the post transfer memo of requisite 4661...they secretly created a non-posted position for the Westshore campus using the same requisition for 4661 of which I was not aware until the acceptance of the Westshore position was announced. (publicly)

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

Heidi Kamel...intricately involved when my counterpart raised concerns over the posting of 4661 had not similar concerns for the participation of two AAUP vice presidents on the covert committee. Dr. Kamel referred me to Professor Wilkins, who although proactively involved with the requisite for 4661 narratives when involve my white counterpart stated it was not a concern for JFSC at all.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

As a 20+ year veteran of the college and having served on five hiring committees, I am well aware of the inappropriate nature of this hiring committee ...despite claims by the administration of (JFSC) faculty leadership (as required and no demonstrated evidence of)... there are no policies that support the discriminatory practices that have furthered the hostile work environment within which I exist. (pre-retirement)

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

Having exhausted all administrative remedies within Cuyahoga Community College and the Equal Employment Opportunity Commission and with no support from JFSC or CCC-AAUP under which CBA agreements are nullified, I have no choice but to seek legal remedies.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

When a letter of concern was sent to upper administrators of Cuyahoga Community College ("Tri-C" or the "College")), outlining scheduling and counterparts violations, aided by selected union and faculty senate leadership, administrators of Tri-C, embarked on a multi-faceted suppression and retribution campaign to prevent further exposure of ongoing discriminatory and unfair labor practices *and* to prevent my revealing of violations of several institutional and State of Ohio policies which are also matters of concern to the public.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

As a direct and proximate result of this unethical and in some cases, unlawful conduct, Professor Diane Gaston has endured physical, psychological, economical and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, as well as other terms, privileges, and conditions that reach beyond active employment at Cuyahoga Community College.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

## RESPONSE TO PARTIES

**Restated Paragraph:**

3. I, Diane Gaston was employed as a tenured faculty member of by Cuyahoga Community College for Twenty-three (23) years. I reside in Cuyahoga County, Ohio.

6

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits that Plaintiff was a tenured faculty member of the College and that Plaintiff was employed by the College from August 2001 to December 31, 2024. Defendant further admits upon information and belief that Plaintiff resides in Cuyahoga County, Ohio. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

4. Defendant Cuyahoga Community College is a public, governmental higher education, educational institution with four campuses throughout Cuyahoga County in Ohio. I had reasonable expectation of adherence to Ohio laws.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits the College is a public, community college with four campuses and numerous off-campus sites throughout Cuyahoga County, Ohio. Defendant states affirmatively that Defendant complies with all applicable federal and state laws. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

## RESPONSE TO JURISDICTION AND VENUE

**Restated Paragraph:**

This court has personal jurisdiction over the defendant (the College) as the institution is within boundaries of Cuyahoga County Ohio.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits this Court has personal jurisdiction, but denies that Plaintiff can state a claim as a matter of law. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

Venue is proper because all parties involved reside work or conduct business in Cuyahoga County and events giving rise to this claim took place within the Colleges jurisdiction.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits venue is proper in this Court, but denies that Plaintiff can state a

claim as a matter of law. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

## RESPONSE TO FACTUAL BACKGROUND

**Restated Paragraph:**

*I, Diane Gaston, a distinguished tenured faculty member with a spotless record, earning the highest faculty awards at the College, was forced to retire as Associate Professor of Philosophy, Humanities and Religious Studies on December 31, 2024.*

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

5. From 2001 -2006, I served at each of the three main campuses as adjunct faculty or lecturer.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

6. In 2007, I was awarded the first ever multi-office full-time faculty schedule, split between Metro and Western campuses.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

7. I served as Faculty Coordinator for Philosophy, Humanities and Religious Studies for the Metropolitan campus from 2008-2012, where I increased enrollment in those areas significantly.
- In this role, both Bradley Lipinski and Robert Gala expressed (no desire to teach at Metro)

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

8

**Restated Paragraph:**

8.  Receiving tenure in 2012, I transferred fully to Western Campus in Parma, Ohio where I also served as Faculty Coordinator, surrendering the position in 2017.

- Training my counterpart Kevin Kondik as I turned the position over to him, thus (he knows proper protocol)

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits Plaintiff received tenure in 2012 and transferred to the College's Western Campus in 2013. Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations regarding Plaintiff's service as faculty coordinator and, therefore, denies the same. Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations regarding her training of Kevin Kondik and, therefore, denies the same. The allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint regarding proper protocol are vague and ambiguous, and Defendant is unable to determine whether to admit or deny them and, therefore, denies the same.

**Restated Paragraph:**

9. Throughout my tenure at the College, I have been recognized for countless student initiatives and received both the Ralph M. Besse Excellence in Teaching as well as the League for John & Suanne Rouche Innovation in Community College Excellence Awards. The highest faculty honor for any faculty member at Tri-C. Early in my career, I began to notice what then seemed like mere coincidence, now seem clearly discriminatory and intentional.
Re: Several examples related the combined claim(s)

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

10. Around 10 years ago, Sam LiPuma won the prestigious Besse Award , presented to faculty for teaching excellence. In recognition, life-sized images of professor LiPuma were displayed on 3 to 4ft flags on 10 ft poles at the Pleasant Vally and York Rd. entrances as well as strategic placements throughout the campus grounds for the entire community to appreciate. In 2014, I was nominated by a student and selected by my peers to receive the prestigious Besse Award. Rather than demonstrate my accolade and display my image on 10 ft poles, throughout the Western campus, they decided to award a special parking spot, indicated by a single 8' by 11' sign on a 4 foot pole at the end of the Western campus faculty parking lot.

9

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

11. As the senior counterpart of the group, Sam LiPuma nominated every newer member as counterparts chair, bypassing me repeatedly. First, he nominated the newest hired tenure-track member, Justin Miller.

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

12. When Justin Miller resigned the position over a dispute I raised due to his unilateral surrender of Bioethics as a required course for Heath Careers.

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

13. Sam LiPuma, then nominated the newest hired tenure-track member at that time, Kevin Kondik.

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

14.When Kevin failed to reign in Brad Lipinski who continually caused problems and violated policy, he resigned.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

15. Kevin then nominated the newest hired tenure-track member, Dr. Brian Johnson, whose hiring committee I served, demonstrates how I was never as an equal colleague to my White junior counterparts.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

16. I was routinely excluded from knowledge of programs, opportunities and initiatives that my colleagues were allowed to benefit from financially, as outlined to upper administration and faculty leadership regarding Mandel and other programs.
   - This also applies to the Western Campus Faculty Senate Chair position. I was blocked from running cir. 2018, they justified restructuring the term to a two-year term, succeeded by Sam Lipuma.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

17. Although not limited to the REL 2000 example, I have also chosen to avoid participation in initiatives out of the need to protect my intellectual property, as my ideas have been implemented throughout this institution and have always been welcomed where I am not, especially when inappropriately attached to one of my white colleagues.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

18. Because of my continual advocacy for students, I have highlighted harmful policy infractions by my colleagues, faculty and administrators, which has created an ongoing hostile work environment. Including-

11

- Despite my apoplectic opposition, Dr. English, against the CCC-AAUP CBA, assigned Brad Lipinski, multiple emergency lecture positions Cir. 2013-14 when the Philosophy Department was fully staffed.
- and while on PIL assigning Robert Gala to lecture position in the same manner records will show that neither individuals taught at the metropolitan campus prior to being awarded rare lecture positions over adjunct who have served at campus for decades
- Opportunities were subsequently created for each of these White men, while denying my right to transfer to Metro by not posting a position to allow a transfer after the untimely passing of one colleague and the retirement of the other. (Explicit Title VI violation as the students of Metropolitan campus deserved that which was comparable at other campuses.
- Robert Gala consistently had a 14 week and a 16 week schedule all religious studies I on the other hand had 3 to 2050 bioethics classes.
- The Religion 2000 class is only taught by Robert Gala, an adjunct.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

*On February 20, 2024, I sent a letter of concern outlining an unusual inability to select a reasonable schedule and to access available resources.*

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits that Plaintiff sent an email titled "Concerns" to Dr. English and others on February 20, 2024, and that the contents of the email speak for themselves. Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

19. As senior in my department and Associate Professor of Philosophy, Humanities and Religious Studies, my concerns included but were not limited to repeated instances of my junior colleagues misappropriating my intellectual property, placing their names on my efforts and publications while excluding me from opportunities and resources available to my white junior counterparts and part-time instructors.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits that Plaintiff sent an email titled "Concerns" to Dr. English and others on February 20, 2024, and that the contents of the email speak for themselves. Defendant

12

denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

I sat silent when in 2015, after a rewarding yet grueling LMS Review process, Professor Patrick Stansberry ( a White male) was credited with my efforts, having omitted my name from any part of the program, even as a member.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

Subsequently, he was awarded the technology grant we both applied for to complete the FYE Blackboard Site. As his project never materialized, I was commissioned to create a college wide FYE Blackboard Site for faculty, between 2015 and 2019. In 2019, Iworked throughout the summer to transition the site to OLAT in late July. **Three weeks later,** Tom Kemp and the OLAT Team were honored at Convocation, with the President's Award for the phenomenal FYE Blackboard site for four years of my efforts. At this point, my name has been removed... I created the program, curriculum and materials for the Robert Lewis *Academy of Scholars,* **was then used to gain the original 10 million dollars for the Mandel** *Scholars Academy.* It was my hope that much good would result. The curriculum and programming are still used today even though I have been excluded from any involvement and resulting opportunities. My colleagues have continually used Mandel to violate policies that disproportionately disadvantage me... (excerpt)

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

20. A series of events followed culminating in the difficult and premature decision to retire. Including but not limited to:
   - Schedule manipulation that removed necessary courses for non-essential vanity classes, while preventing my teaching at other campuses.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

13

**Restated Paragraph:**

21.  Dr. English and I met to prevent Brad Lipinski from creating a Dystopian Philosophy, non essential class.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

22.  To prevent David Bematowitz and Justin Miller offering a Philosophy of Capitalization, a 2000 level cross listed History course that students can only use as an elective, forcing them to take a non-essential class as part of Mandel programming.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

23.  I complained to the Provost that Justin Miller and David Bematowitz tried to bypass the rigors of the curriculum process. The apologized and then bypassed anyway by using a Special Topics designation. Although allowed for three years, they have offered at least over six years.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

24.  Continual violations of my CCC-AAUP CBA intellectual property rights by removing my name from crated curriculum and publications. Religion 1010, Philosophy 2010 and Honors PHIL 1010.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

25. Dr. Clarke forced me maintain non-productive and "serial enrollees," in my classes against College directed minimum completion requirements.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

26. My immediate supervisor, Dr. Clarke conducted a non-participatory 'faculty evaluation, against CCC-AAUP CBA agreement.
Dr. Clarke allowed continual unauthorized accessing of my Blackboard course sites by various college employees which is not allowed.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

27. I experienced unusual ongoing browser and drop for non-attendance enrollment issues.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

**On April 4, Professor Gaston, Associate Professor of Philosophy, Humanities and Religious Studies received a communication announcing a non-posted Tenure-Track position at the Westshore Campus in Philosophy.**

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

28. This violated CCC-AAUP CBA agreement as well as Cuyahoga Community College hiring policy demands.

15

- No college-wide announcement and public posting of any new Tenure Track position. Selection and convening of the college-wide hiring committee through the Joint Faculty Senate Committee.
- No Posting of transfer memo college-wide for all eligible faculty to consider.
- No Public announcement of the new hire upon making a final selection. 14. There was no announcement of a Tenure Track position in Philosophy for Westshore within
- Cuyahoga Community College. They did not the hire of Adam Betts to the college until August of 2024 as customary.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

29. By not publicly announcing the position and conducted secretly by junior counterparts, was denied the right to serve as a member of the hiring committee for a colleague in my department or the option to transfer as my white counterpart, Bradley Lipinski had been given.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

I followed up with a second letter to Drs. Karen Miller and Lindsay English
Excerpt:
I now understand the impossible schedule that prompted my first letter, in addition to being unable to find a single extra class to supplement my income from the complete college wide schedule. What I failed to realize is that not only had Dr. Clarke and Kevin Kondik orchestrate the REL 2000 course for the adjunct Robert Gala while I was on PIL, there was and is an organized effort of the coordinators of Philosophy, Humanities and Religious Studies college wide to disadvantage me in ways including the schedule.The members of this committee, also known as the *Faculty Coordinators of Philosophy, Humanities and Religious Studies* College wide:
Kevin Kondik PHL. HUM. REL. Faculty Coordinator       Western                 Campus
Theresa Gromek PHL. HUM. REL. Faculty Coordinator Westshore Campus
Justin Miller PHL. HUM. REL. Faculty Coordinator       Eastern Campus
David Bernatowicz PHL. HUM. REL. Faculty Coordinator Metro Campus
Despite my offer (as the person who built the metro schedule,) Assistant Dean Abby Dohanos prior to her meteoric ascension, insisted that it *must only* be History Professor Bernatowitz...
**\*Professor Bernatowitz has absurdly been V P AAUP representative for the Metropolitan campus for**
**my entire 20+ year career. His influence has blocked my involvement on many levels.**

16

- Prevented my access to the 200 pool (faculty dollars) accessed by email request. I have not received an email in at least three years.
- Plaintiff suffered the sting **of** Tri-c retaliatory, discriminatory, and racially offensive conduct. Because the administration and faculty leadership failed to address or correct infractions, the hostile environment continued.

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

**In August of 2024, I was informed that one of my counterparts reported to HR that he feared for his safety, after aggressively approaching me in the B-building suite outside our collective offices in June of 2024.**

**Answer:**

With regard to the allegations contained in above-restated Complaint of Plaintiff's Amended Complaint, Defendant admits that a College employee filed an internal complaint against Plaintiff. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

30. In August of 2024,1 was informed that a much younger male counterpart filed a spurious report that he "feared for his safety" and that I "potentially" created a "Hostile Work Environment."
*I am currently disabled, granted work from home status beginning in 2023.*
*I gained full FMLA status until my retirement on December 31, 2024.*
- I learned in February of this year that the college refused to acknowledge my past employment, blocking my Aetna medical coverage and ability to have a much needed surgery.
- I was finally enrolled in the general Medicare enrollment of March 1st (with penalty)

**Answer:**

With regard to the allegations contained in above-restated Complaint of Plaintiff's Amended Complaint, Defendant admits that a College employee filed an internal complaint against Plaintiff. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

31. Although the charge was filed in June 2024, I was not informed until August per request to appear for a confidential hearing. Always cautioned to maintain secrecy. The entire process violated Human Resources practices as well as statues mentioned above.

- Having provided at least five witnesses in the August 21, 2024 hearing to the two minute exchange, all verified that the much larger younger male counterpart was the aggressor. All were cautioned to maintain secrecy surrounding the event and were excluded from the investigative narrative.
- Because I had not had any further information, I inquired on October 4, 2024 of the decision of the specious complaint.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

32. I finally received the Final Outcome Letter on October 14th in my favor.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits Defendant sent Plaintiff an investigation outcome letter on October 14, 2024. Defendant further admits the entirety of the investigation outcome letter speaks for itself. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated Paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**
33. Unlike previous final outcome letters received in the past, this Final Outcome Letter was minus details, any narrative or witness statements.

- The letter merely stated "*The investigation concluded that your actions did not rise to the level of violation of College policy or procedure.*"

**Answer:**

Insofar as the allegations contained the above-restated paragraph of Plaintiff's Amended Complaint characterize, paraphrase, reference, or quote a discrete portion of a referenced correspondence, Defendant states that the entirety of the document speaks for itself. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

**As the pressure campaign continued, inappropriate actions on the part of my counterparts escalated, having reported my concerns to administration and faculty leadership with no response.**

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

34. With no documentation or rationale or notice to me, the College allowed Justin Miller, Bradley Lipinski and Sam LiPuma to illegally access my learning management Blackboard site, offer a brutal critique of my professional integrity as rationale to the student for changing her grade. (It is rare if never would there be three faculty from the same department on a Level II grade dispute panel)

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

34. On October 4, 2024, in violation of AAUP-Collective Bargaining Agreement, Professor Gaston received a copy of a final determination letter overturning a grade of F she assigned to a student in her summer 2024, 2000 level Religion course.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

35. The letter informed the student that the grade of F had been changed to a C. The rationale provided to the student painted me as Professor Gaston was merely copied.

**Answer:**

Insofar as the allegations contained the above-restated paragraph of Plaintiff's Amended Complaint characterize, paraphrase, reference, or quote a discrete portion of a referenced correspondence, Defendant states that the entirety of the document speaks for itself. Defendant

19

denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

***The AAUP contract demands I (the faculty member in question) provide necessary documentation and rationale to address any faculty /student concern.***

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

36. The attached letter deceptively states "the faculty member was unavailable for input." In violation of AAUP-Collective Bargaining Agreement (CBA), I must be informed.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

37. They could not produce as there was not a memo request to participate on the non-announced Grade Dispute forwarded to faculty college-wide.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

38. In violation of AAUP-Collective Bargaining Agreement (CBA), no justification or documentation or knowledge of the process was provided to Professor Gaston prior to changing the grade.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

20

**Restated Paragraph:**

39. The attached defamatory letter alleged academic incompetence, and failure to adhere nonexisting "industry syllabus standards to not offer partial credit.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

40. To judge academic rigor, authorized access to the course site would have been required.
- I was not informed nor authorized illegal access of (at that time) anonymous faculty members to my course Blackboard site.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

41. In violation of AAUP-Collective Bargaining Agreement (CBA) Level **II** Grade Dispute Panel member's names were not listed and remained anonymous despite numerous request.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

**Cuyahoga Community College Grade Dispute Policy**
1. The student reaches out to faculty member.
2. The faculty member is forwarded a copy of the dispute and intent to convene a Grade Review Panel by respective Dean.
3. Convened Panel Chair determines logistics of meetings
4. Review Panel members meet and confer with both faculty and student.
5. Final Determination communicated to both student and faculty member.

**Answer:**

Insofar as the allegations contained the above-restated paragraph of Plaintiff's Amended Complaint characterize, paraphrase, reference, or quote a discrete portion of Policy 3354:1-30-03.13, Defendant states that the entirety of the document speaks for itself. Defendant denies the

21

remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

***The student was provided my personal cell number following the close of the semester.***

42. On August 7th at 7:10 PM, I received a text *message* on my personal phone from the same student involved in the grade dispute regarding her final grade. The student had earned an F. *This student, a very popular sports figure at the College was somehow provided my personal cell number.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

43. The student not having reached out the entire term was not familiar to me and I was extremely alarmed. I have never had unauthorized contact in my personal space by a student in my entire career.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

44. I immediately reported the incident to my supervisor, Dr. Clarke and the Student Affairs, Dean of Access & Completion.
   - During this time Jason Carter, College Attorney tried to intimidate me into updating curriculum, despite my work-from-home FMLA status.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

45. As harassing messages continued, I was forced to change my long-held personal phone number, causing great disruption that continues to this day.

**Answer:**

22

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

46. After receiving the Final Determination letter, I recognized that it was the same student and immediately filed a grievance on October 6, 2024, requesting a reversal of the grade change and retraction of the defamatory letter sent to the student.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits Plaintiff filed a grievance on or around October 6, 2024. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

47. Instead of addressing the authorized contact by the student, the student was rewarded by the College with a drastic change of grade for reasons yet to be disclosed.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

*As I attempted to address the unlawful grade change and access of my Learning Management Page, I experienced opposition from all sides.*

48. Leadership in the Online Learning and Technology (OLAT) department refused to forward a report and ignored all inquiries regarding faculty or administrative access to my course sites, as is my legal right for any class created and registered in my name.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

49. In violation of CCC-AAUP CBA, the college attempted repeatedly to delay the grievance hearing beyond the 10-day required convening.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

50. To unsuccessfully avoid the grievance hearing, the college, attempted intimidation as Human Resources falsely claimed in a formal notice that "faculty should not attend virtual meetings while on FMLA."

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

51. Despite delays and disruptions, names of Level II faculty members were revealed on Friday, October 18th prior to the hearing.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits that it provided the name of the individuals who served on the Level II committee on October 18, 2024. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

52. The three names revealed would have been understood immediately by administrators, union and faculty leadership as the same three who had placed their names on my intellectual property, continually benefitted from my efforts and disadvantaging me in numerous ways.
- Their names and images appear on the page for the Robert Lewis Academy, celebrating the successes of my students.
- Brad Lipinski removed my name from the text compiled for the class in 2009, replaced with his own. He was not at the college in 2009.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

24

**Restated Paragraph:**

53. To date, there has been no response, repercussion or acknowledgement of the relative disappearing of all my efforts which now displays the literal names and images of the counterparts involved. That they would allow three Philosophy counterparts with well-known issues is unconscionable.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

*Grade dispute panels normally contain a combination of disciplines
for varied viewpoints.*
54. During the October 21, 2024 hearing there were no documents, rationale or justification offered for either the grade change or for not following college grade dispute policies.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

55. On October 30, 2024 the College determined that there was no violation and refused my request.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits that a Step II grievance decision was issued on October 30, 2024. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

56. As I prepared my appeal, and ignored request to verify if the student's summer graduation, transfer and athletic eligibility was dependent upon the grade change.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

25

**Restated Paragraph:**

57.  I reported anomalies in my emails and all emails related to the grade dispute had disappeared in my account to administration and AAUP.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

58.  After several attempts to have emails restored and the knowledge of the intentional acts carried out by the college; ignored by faculty leadership, I decided to leave the college to preserve my own physical and mental health.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

59.  Subsequently the appeal of the grade change decision and retraction was denied.

**Answer:**

With regard to the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint, Defendant admits that Plaintiff was provided a copy of the Level 3 grade dispute decision on December 10, 2024, and because Plaintiff and the student were no longer with the College, the decision was made to not convene another Level II committee and to administratively change the grade based on the original committee recommendation. Defendant denies all other remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

60.  As I prepared for retirement, on Friday, December 6th at 3:17pm I received an intimidating message from Jonathan Decker, J.D. Executive Director, Employee and Labor Relations.
The request is to set a time for he and Dr. Courtney Clarke *to facilitate the clearing of my office and collect/catalogue the return your College property... Finally, please do note that we will need to collect any College property from you at the time we select as well. **These include items such as your ID badge, parking pass, physical keys, College-issued technology (laptop, tablet, etc.), and any other College property in your possession...***

**Answer:**

Insofar as the allegations contained the above-restated paragraph of Plaintiff's Amended Complaint characterize, paraphrase, reference, or quote a discrete portion of a referenced email correspondence, Defendant states that the entirety of the document speaks for itself. Defendant denies the remaining allegations, inferences, and claims set forth in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

61.  No one has ever been required to return a physical ID card or parking pass upon retirement. We have not been distributed parking passes in two years.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

62.  I asked on Sunday, December 8th, if I could have the privacy and dignity afforded anyone retiring with distinguished service? The answer was no.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

**Restated Paragraph:**

63. I sent a letter to the Joint Faculty Senate Faculty Body on Monday, December 9th as my retirement had been kept secret from the greater faculty body, denying my students and the community to commend and join in celebrating my years of service.

- Melissa Soto (chair) shut down my inquiry, unlike the white faculty member whose letter I attached.
- Dr. Clark did formally acknowledging processing of my retirement on December 17 until one week after the semester ended and two months after the October processing of my retirement papers completion at STRS.

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

27

**Restated Paragraph:**

64. Alarmed at the continual request for a non-existent parking pass, and the humiliating request to monitor my *"Pack up and Move Out"* (as if I were not retiring in good standing process), I requested the witness of an officer from Public Safety, On December 16th at 4:00 pm. Officer #227 informed Dr. Clarke and Attorney Decker, parking passes have not been required in five-years.

**Answer:**

Defendant is without information sufficient to form a belief as to the truth or falsity of the allegations in the above-restated paragraph of Plaintiff's Amended Complaint and, therefore, denies the same.

**Restated Paragraph:**

65. This situation has served to exacerbate my medical condition for which I am now rendered disabled until further notice.
Having entered the sacred space of faculty and student and having exhausted all administrative and faculty tools at my disposal, I am forced to seek legal remedies.

**Answer:**

Defendant denies the allegations contained in the above-restated paragraph of Plaintiff's Amended Complaint.

## RESPONSE TO PLAINTIFF'S RELIEF SOUGHT

1. Defendant denies that Plaintiff is entitled to any of the relief sought in Plaintiff's Amended Complaint.

2. All other allegations and inferences contained in Plaintiff's Amended Complaint not herein admitted, including but not limited to, the allegations and inferences contained in the unnumbered headings in Plaintiff's Amended Complaint, are denied.

## AFFIRMATIVE DEFENSES

1. Insofar as Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, Plaintiff's Amended Complaint must be dismissed.

2. Defendant is entitled to all absolute, qualified, statutory, or common law immunities or privileges granted by Ohio Revised Code Chapter 2744 and Ohio common law.

28

3.      Defendant is entitled to all absolute and qualified immunities available under federal law, state law, or both.

4.      Insofar as Plaintiff's claims and damages may be barred by statutory or common law defenses on compensatory damages, including set-off, collateral source, contribution and indemnity, Plaintiff's claims must be dismissed or limited accordingly.

5.      Insofar as Defendant's actions were in good faith, privileged, taken for legitimate, non-discriminatory and non-retaliatory reasons and in accordance with law, Plaintiff's claims must be dismissed.

6.      Insofar as Plaintiff's claims and damages may be limited or barred by any statutory or common law defenses or limitations governing joint and several liability, Plaintiff's claims and damages must be dismissed or limited accordingly.

7.      Insofar as Plaintiff's request for attorneys' fees and costs may be limited or barred by the limitations on attorney fee awards under 42 U.S.C. § 1988, Rule 54 of the Federal Rules of Civil Procedure, and Ohio law, Plaintiff's request for damages must be limited accordingly.

8.      Insofar as Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel, unclean hands, and laches, Plaintiff's claims must be dismissed.

9.      Insofar as Plaintiff has failed to mitigate her claimed damages, Plaintiff's damage claims should be limited accordingly.

10.     Insofar as Plaintiff's alleged losses, damages, or injuries were proximately caused by Plaintiff, Plaintiff's claims should be dismissed.

11.     Any and all adverse actions of which Plaintiff complains would have been taken by Defendant even in the absence of any *allegedly* unlawful motivation.

29

12. Insofar as Plaintiff has failed to exhaust her administrative remedies, Plaintiff's claims should be dismissed.

13. Insofar as Plaintiff's claims are time barred by the applicable statute of limitations, Plaintiff's claims should be dismissed.

14. R.C. Chapter 2744 bars punitive damages on Plaintiff's state law claims.

15. R.C. Chapter 2744 caps Plaintiff's claims for compensatory and other non-out-of-pocket damages on Plaintiff's state law claims.

16. R.C. Chapter 2744 subjects Plaintiff's damage claims to set-off for any collateral source benefits on Plaintiff's state law claims.

17. R.C. §2315.21 limits Plaintiff's punitive damage claims (in addition to the bar in Chapter 2744) on Plaintiff's state law claims.

18. R.C. §2315.18 limits Plaintiff's compensatory damage claims (in addition to the cap in Chapter 2744) on Plaintiff's state law claims.

19. In addition to being offset by R.C. Chapter 2744, R.C. §2315.20 subjects Plaintiff's damage claims under state law to set-off for any collateral source benefits.

20. Plaintiff's claims may be barred by the after-acquired evidence rule.

21. Plaintiff's R.C. Chapter 4112 claims are barred and preempted by the exclusive remedies in R.C. Chapter 4117.

22. Insofar as Plaintiff failed to engage in any protected activity under the First Amendment, Plaintiff's Amended Complaint should be dismissed.

23. Insofar as Plaintiff's actions were taken as an employee of the College and are not protected under the First Amendment, Plaintiff's Amended Complaint should be dismissed.

24.     Insofar as the primary objective of the federal assistance the College receives is not to provide employment, Plaintiff's Amended Complaint should be dismissed.

25.     Insofar as Plaintiff failed to engage in any protected activity under Title VII or R.C. § 4112, Plaintiff's Amended Complaint should be dismissed.

26.     Insofar as Plaintiff was not involved in a civil or criminal action or proceeding, Plaintiff's Amended Complaint should be dismissed.

27.     Plaintiff's Amended Complaint fails to include a copy of the written documents quoted and/or referenced.

28.     Defendant reserves the right to amend this Answer to add affirmative defenses deemed applicable upon further discovery herein.

WHEREFORE, having fully answered, Defendant prays that Plaintiff's Amended Complaint be judged according to the law and the evidence and that the same be dismissed with prejudice.

Respectfully submitted,


*/s/ Stephanie Olivera Mittica*
Barry Y. Freeman (0062040)
bfreeman@ralaw.com
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH  44114
P:  216.623.0150
F:  216.623.0134

and

31

Stephanie Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
P:  330.376.2700
F:  330.376.4577

*Attorneys for Defendant*
*Cuyahoga Community College*

## JURY DEMAND

Should there be a need for trial in this matter, Defendant requests a trial by jury on all claims triable by jury.

Respectfully submitted,

*/s/ Stephanie Y. Olivera Mittica*
Barry Y. Freeman (0062040)
bfreeman@ralaw.com
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH  44114
Telephone: 216.623.0150
Facsimile: 216.623.0134

Stephanie Y. Olivera Mittica (0095651)
smittical@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577

*Attorneys for Defendant*

32

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically on May 7, 2025.  A copy of this

filing was sent to the following by U.S. mail:

Diane Gaston, *Pro Se*
15 White Street
Berea, OH  44115

*/s/ Stephanie Olivera Mittica*
*One of the Attorneys for Defendant*
